OPINION OF THE COURT
Edward J. Greenfield, J.
Plaintiffs move for summary judgment as to four of the six causes of action in the complaint and also to dismiss defendants’ two counterclaims.
Defendants’ cross motion seeks an order directing specific performance of the option to purchase provision of the parties’ lease and delivery by plaintiff of the deed to the subject premises. The cross motion additionally seeks a preliminary injunction to restrain plaintiffs from conveying their title or interest in the premises pendente lite.
Plaintiffs are trustees of a trust that owns a six-story loft building. The trust was formed at the same time, 1970, that the building was leased to defendant corporation for use as art studios and residences (although the building was and is not registered as a multiple dwelling). Apparently, the settlor of the trust is the father of a principal shareholder in defendant corporation, namely, defendant Griefen, Jr., who appears to have had a falling out with his codefendants. The 10-year lease, which set moderate rentals, expired on December 31, 1980 but allowed defendants to renew for an additional 10-year period and to purchase the property at any time during the life of the lease or its extended term.
Plaintiffs contend that they rightfully terminated defendants’ lease in December, 1979 on account of defendants’ late payment of rent for November, 1979 and for defendants’ failure to pay rent thereafter (plaintiffs’ first and third causes of action). Other justification by plaintiffs for termination includes multiple violations of the New York certificate of occupancy and the building code (second and sixth causes of action). Finally, plaintiffs’ claim that defendant was a dissolved corporation when it attempted to exercise its option to purchase in December, 1979 and that *257 it was without power to purchase or obtain financing for the property (fourth and fifth causes of action).
Defendants’ 10 affirmative defenses maintain that they have complied with the lease as modified by the understanding and practice of the parties, and that plaintiffs are estopped by their own misconduct from claiming violations. In two counterclaims, defendants charge plaintiffs with conspiracy to prevent defendants from asserting the right under the lease to purchase the premises, now considerably appreciated in value.
Defendant corporation was dissolved in 1974 pursuant to section 203-a of the Tax Law for nonpayment of taxes but claims it was ignorant of its statutory dissolution. Evidently, after the institution of this action in 1980, defendant corporation filed its tax returns up to date; and accordingly, dissolution was revoked and the corporation was reinstated nunc pro tunc by the Secretary of State (Tax Law, § 203-a).
, With respect to the complaint, the court finds as a matter of law that a corporation dissolved by proclamation of the Secretary of State pursuant to section 203-a of the Tax Law may exercise an option to purchase provision of a lease entered into prior to dissolution of the corporate charter.
The Secretary of State is authorized to dissolve a business corporation which has failed to pay taxes for two years (Tax Law, § 203-a). Such dissolution is made by proclamation filed in the office of the Secretary of State and is published in the State Bulletin (Tax Law, § 203-a, subd 3). Notice to the corportion seems not to be required.
The provisions of sections 1005 and 1006 of the Business Corporation Law apply to corporations dissolved by proclamation of the Secretary of State under section 203-a of the Tax Law (Business Corporation Law, § 1009).
Dissolved corporations may “continue to function for the purpose of winding up the affairs of the corporation in the same manner as if the dissolution had not taken place” and may maintain or defend actions in the courts (Business Corporation Law, § 1006, subd [a]).
*258 Corporations whose charters may have expired continue to have a de jure existence for the purpose of winding up their affairs, and to that end, meetings may be held, corporate property conveyed, suits brought and defended, directors elected and debts paid. Claims which ripen after dissolution, based on contracts entered into prior to dissolution are enforceable. (Expomotion Ltd. v Heidepriem-Santandrea, 101 Misc 2d 593; Stentor Elec. Mfg. Co. v Klaxon Co., 115 F2d 268, 270, revd on other grounds 313 US 487.) Dissolution does not affect either the right of a corporation to collect and distribute its assets or to sue in its corporate name. (Vinlis Constr. Co. v Roreck, 67 Misc 2d 942, affd 43 AD2d 911, appeal dsmd in part, den in part 35 NY2d 715.)
The courts in New York have consistently given effect to the statutory mandate that corporations “may continue to function for the purpose of winding up the affairs of the corporation in the same manner as if the dissolution had not taken place”. (Business Corporation Law, § 1006, subd [a].) A conveyance of real property 16 years after dissolution has been recognized and upheld (Jennings v High Farms Corp., 28 AD2d 693), a contract entered into after dissolution has been held enforceable (A. A. Sutain Ltd. v Montgomery Ward & Co., 22 AD2d 607; Expomotion Ltd. v Heidepriem-Santandrea, supra), and an assignment of a mortgage subsequent to dissolution has been permitted (Northern Props. v Kuf Realty Corp., 30 Misc 2d 1).
Likewise, we think that an option to purchase real estate constitutes a valuable asset and may be exercised by a dissolved corporation for collection and distribution purposes. Such exercise may be considered a significant part of winding up the affairs of the corporation (Business Corporation Law, § 1005, subd [2]; cf. School of Music of Brooklyn Free Musical Soc. v Moritt, 145 NYS2d 645). We note that the option in question remains the defendant corporation’s only asset of value.
The cases cited by the plaintiffs do not support plaintiffs’ limited view of the authority and powers of a dissolved corporation.
*259 Even if this court were to accept plaintiff’s argument that the exercise of the option had prohibited new business for a dissolved corporation, we find that the 1980 reinstatement of the corporation annulled the dissolution and gave the corporation back all of its powers, nunc pro tunc. By statute, the “corporate powers, rights, duties and obligations” were reinstated nunc pro tunc, as if “such proclamation had not been made or published.” (Tax Law, § 203-a, subds 7, 8.) Under this view, defendant’s exercise of its option or renewal rights in 1979 remains a valid use of corporate powers. Moreover, such retroactive validation is not inconsistent with the purpose of the statute. Section 203-a of the Tax Law is designed to encourage payment of delinquent taxes even as it permits corporations dissolved on account of delinquency to wind up their affairs.
An additional rationale exists for crediting defendant corporation with power to exercise the option. New York recognizes that a corporation which carries on its affairs and exercises corporate powers as before dissolution is a de facto corporation, as well, and, ordinarily, no one but the State may question its corporate existence. (Garzo v Maid of Mist Steamboat Co., 303 NY 516, 523-524; A. A. Sutain Ltd. v Montgomery Ward & Co., 22 AD2d 607, supra.) Having clearly dealt with the dissolved corporation from 1974 through 1979, as a de facto corportion and as if dissolution had never taken place, plaintiffs are in a poor position now to claim that the dissolution prejudices the prior contractual rights of the parties (cf. Expomotion Ltd. v Heidepriem-Santandrea, supra, pp 596-597).
In reaching the conclusion that defendant had the power to exercise the option, we do not find that defendant corporation under the circumstances of this case and provisions of the subject lease did validly exercise its option.
To that extent of holding that defendant had the power to act on the option, plaintiffs’ fourth and fifth causes of action are dismissed.
Paragraph 24 of the lease provides in pertinent part that “the failure of landlord to seek redress for violation of or to insist upon the strict performance of any covenant or condition of this lease * * * shall not prevent a subsequent *260 act which would have originally constituted a violation from having all the force and effect of an original violation.”
With respect to plaintiffs’ first and third causes of action dealing with termination of the lease for nonpayment of rent defendants contend that although it was late with its November rent as alleged (the check used to pay rent bounced and tender of a certified check in the appropriate amount was not made until after December 1, 1979) the parties through a course of dealing over the years had modified the lease; rent was often paid as much as 70 days late. Defendant also contends that it was the understanding between the parties that rent paid late would not operate as a default.
Paragraph 20 of the lease provides that the lease comprises the entire agreement between the parties and “any executory agreement hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of * * * [the lease] in whole or in part, unless such executory agreement is in writing and signed by the party” to be charged.
Thus the claimed course of dealing and/or oral modification defenses are ineffectual to raise questions of fact as to whether the late payment of rent constituted a default.
The defendant next contends that even if it was in default for tardy payment of the November, 1979 rent, the lease could not be terminated, under lease paragraph 17 (2) as modified by rider paragraph 40-H, unless the landlord first gave it notice and made demand for the rent. Plaintiff landlord contends, and this court agrees, that the notice provision applies solely to the obligation of the landlord to give notice before re-entering the premises for the purpose of evicting the defendant tenant. Rider paragraph 40-H (1) refers to defaults by the tenant under paragraph 17 (1) where the default involves failures to fulfill covenants under the lease other than the payment of rent. In those circumstances, notice is required and the tenant shall not be deemed to be in default if the tenant complies with the matter contained in the notice.
*261 Defaults by the tenant in the payment of rent are treated differently. Under paragraph 17 (2) (a) as modified by paragraph 40-H (2), the tenant shall be deemed in default if it fails to pay rent within 10 days after it is due. Notice is required if the landlord seeks to evict or dispossess the tenant (see RAPL art 7).
Accordingly, it is clear that when on December 10, 1979 defendant sought to exercise its option to purchase the lease had already been in default for 10 days, the lease was terminated and under rider paragraph 46 (D) the option did not survive that termination.
The defendants’ second counterclaim alleges in sweeping terms that because of plaintiffs’ refusal to honor the option, their misstatements, misrepresentations and fraudulent conduct, malicious plan to violate the terms of the lease and the institution of this lawsuit in bad faith, defendants were damaged. The allegations of violation of the terms of the lease and refusal to honor the option are at best allegations of breach of contract and no tort claim is made out upon them. The allegations of fraud and deceitful conduct are insufficient in that they fail to set forth with particularity what statements or conduct were relied upon and in the context of this case, it is apparent that these broad allegations are part and parcel of the defenses of oral modification and course of dealing. With respect to the allegation of malicious prosecution, it is clear that the prosecution of this counterclaim must be dismissed since the predicate for such cause of action is that a prior action must terminate favorably to the party making the claim. “That requirement precludes assertion of a cause of action for malicious prosecution, by way of counterclaim, in the very action alleged to be malicious since the foundation of the right to sue for malicious prosecution does not yet exist” (Flaks, Zaslow & Co. v Bank Computer Network Corp., 66 AD2d 363, 366).
In view of the foregoing (other causes of action with respect to the certificate of occupancy have not been considered) plaintiffs’ motion for summary judgment is granted and defendant’s cross motion is denied and its two counterclaims are dismissed.
*262 Plaintiff is entitled to a judgment that it has the right to immediate possession of the premises for nonpayment of rent and that it is entitled to an award of back rent and use and occupancy from December, 1980.